UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

INTERNATIONAL SPEEDWAY CORPORATION, a Florida for-profit corporation,

Plaintiff,

CASE NO.: 6-13-cv-00015-CEH-GJK

vs.

RACING IN-SITES, LTD., an Ohio limited liability company; and GREAT REWARD, L.L.C., an Ohio limited liability company,

Defendants.
_________________________________/

**RENEWED MOTION FOR FINAL JUDGMENT AFTER DEFAULT**

COMES NOW the plaintiff, INTERNATIONAL SPEEDWAY CORPORATION ("ISC") by and through the undersigned attorney, and renews its motion for entry of final judgment after default joint and severally against defendants, RACING IN-SITES, LTD. ("RACING IN-SITES") and GREAT REWARD, L.L.C. ("GREAT REWARD") and would show as follows:

## I. Background

1. Before the institution of this action, ISC and RACING IN-SITES had business transactions between them under the terms of that certain Promotional Display Space Agreement By and Between Racing In-Sites, Ltd., and International Speedway Corporation, entered into as of January 18, 2012, and terminated November 12, 2012 (referred to herein as the "Promotional Display Space Agreement"). (A copy of the Promotional Display Space Agreement is attached to ISC's Complaint as Exhibit "A" thereto.)

## II. <u>Default</u>

2. On January 2, 2013, ISC filed its original complaint with the U.S. District Court, Middle District of Florida, Orlando Division, seeking liquidated money damages, arising from breach of contract, joint and severally against RACING IN-SITES and GREAT REWARD. **(Dkt. #1.)**

3. ISC and RACING IN-SITES mutually agreed in writing to the mandatory and exclusive jurisdiction of the U.S. District Court, Middle District of Florida, Orlando Division, and waived any and all objections to venue and personal jurisdiction. *See* § 14(C), Promotional Display Space Agreement.

4. RACING IN-SITES selection of jurisdiction and waiver of any and all objections to venue is attributed to GREAT REWARD as these two entities are functionally the same legal entity, RACING IN-SITES being a mere instrumentality or alter ego of GREAT REWARD. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("traditional principles of state law may allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."). *See also Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984).

5. On July 8, 2013, ISC filed its Affidavit of Service showing personal service on RACING IN-SITES on June 25, 2013. **(Dkt. #15.)**

6. On July 8, 2013, ISC filed its Affidavit of Service showing personal service on GREAT REWARD on June 25, 2013. **(Dkt. #16.)**

7. On July 30, 2013, a default was entered by this Honorable Clerk of Court against defendants, RACING IN-SITES and GREAT REWARD. **(Dkt. # 19.)** (A copy of the Entry of Default was served upon RACING IN-SITES and GREAT REWARD via First Class Mail. **(Dkt. #20.)**)

8. The clerk properly entered a default against RACING IN-SITES and GREAT REWARD under the Federal Rules of Civil Procedure as RACING IN-SITES and GREAT REWARD failed to plead or otherwise defend. Rule 55(a), Fed.R.Civ.P. **(Dkt. # 19.)**

## III. Governing Law

9. Section 14(C) of the Promotional Display Space Agreement provides: "Governing Law and Jurisdiction. The validity, interpretation and performance of this Agreement shall be governed by the laws of the State of Florida, without giving effect to the principles of comity or conflicts of laws thereof."

10. Thus, this Court's decision as to whether GREAT REWARD is liable for breach of the Promotional Display Space Agreement must be decided under Florida law, not Ohio law. *Also see Vacation Ventures, Inc. v. Holiday Promotions, Inc.*, 687 So. 2d 286 (Fla. 5th DCA 1997).

11. ISC withdraws its reliance on *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 652-53 (5th Cir. 2002) cited in paragraph 8 of its Complaint and *Dombroski v. Wellpoint, Inc.*, 879 N.E.2d 225, 230 (Oh. 7th Ct. App. 2007) cited in paragraph 23 of its Complaint **(Dkt. # 1)** and as cited in paragraph 17 of ISC's Motion for Final Judgment After Default **(Dkt. # 21).**

## IV. Alter Ego

12. Under Florida law, the corporate veil may be pierced upon a showing of improper conduct. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984); *In re Homelands of DeLeon Springs*, 190 B.R. 666 (Bank. M.D. Fla. 1995). Therefore, the corporate veil may be penetrated

either at law or in equity if it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them. *Id.* at 1120.

13. "There are at least fifteen factors that have been deemed to be relevant in a determination of whether a corporate entity should be disregarded: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporations by other corporations in the group; (10) whether the corporation in question has been properly used by others of the corporations as if it were their own; (11) financing of subsidiary by parent; (12) informal intercorporate loan transactions; (13) parent and subsidiary's filing of consolidated income tax returns; (14) whether subsidiary's directors act independently in interest of subsidiary rather than in interest of parent; (15) existence of fraud, wrongdoing or injustice to third parties." *Hilton Oil Transp. v. Oil Transp. Co.*, 659 So. 2d 1141, 1151-52 (Fla. 3d DCA 1995).

14. GREAT REWARD's control over RACING IN-SITES is so complete that RACING IN-SITES has no separate mind, will, or existence of its own.

15. The fictitious name "Racing In-Sites" is registered to GREAT REWARD with the Ohio Secretary of State.

16. GREAT REWARD and RACING IN-SITES have the same president: David Kaiser.

17. David Kaiser holds out GREAT REWARD to include the limited liability company RACING-IN SITES. *See* a copy of David Kaiser's Linked-In Web Page attached to ISC's Complaint as Exhibit "B.") (**Dkt. # 1-2.)**

18. GREAT REWARD and RACING IN-SITES operate from the same office and utilize the same address.

19. GREAT REWARD engaged in improper conduct in the formation or use of RACING IN-SITES. More specifically, RACING IN-SITES was formed for the purpose of misleading ISC, a creditor, and to work a fraud upon ISC by attempting to avoid liability for monies that may become due under the Promotional Display Space Agreement. In an email dated September 7, 2012, David Kaiser, in his capacity as president of both RACING IN-SITES and GREAT REWARD states with regard to the Promotional Display Space Agreement that, "ISC can sue us and will eventually win. However, **we set up a new organization, Racing In-Sites, to sign this contract. There are no assets in this organization** as, we lost tens of thousands of dollars trying to make this work." (Emphasis added.) (A copy of David Kaiser's email is attached to ISC's Complaint as Exhibit "C" thereto.) (**Dkt. # 1-2.)**

20. RACING IN-SITES failed to adequately capitalize itself in relation to the value of the Promotional Display Space Agreement.

21. RACING IN-SITES entered into the Promotional Display Space Agreement with ISC and incurred a contractual obligation of $896,361, five months after formation.

22. GREAT REWARD paid five payments directly to ISC for the benefit of RACING IN-SITES, totaling $19,263.15, via company checks issued from GREAT REWARD for monies due under the ISC-RACING IN-SITES Promotional Display Space Agreement. (Copies of

GREAT REWARD's five company checks are attached to ISC's Complaint as Composite Exhibit "D" thereto.) These were the only post-execution payments made by or for the benefit of RACING IN-SITES.

23. No company checks were ever issued from RACING IN-SITES company bank account to pay monies due under the Promotional Display Space Agreement. It is suspected but unknown whether RACING IN-SITES even established a company bank account in its own corporate name.

24. ISC has sustained monetary damages resulting from the actual control and wrongdoing exercised by GREAT REWARD over RACING IN-SITES.

25. Based on the foregoing, it would be equitable to hold GREAT REWARD liable for the debts of RACING IN-SITES incurred under the Promotional Display Space Agreement.

26. GREAT REWARD should be deemed a party to the Promotional Display Space Agreement due to RACING IN-SITES' status as a mere instrumentality or alter ego of GREAT REWARD, as RACING IN-SITES was formed solely for the purpose of signing the Promotional Display Space Agreement, and therewith incurred a contractual obligation of $896,361, five months after formation.

## V. <u>Liquidated Damages</u>

27. Upon entry of default the well-pleaded allegations of the complaint are taken as true. *Wenboy Limited Partnership v. Rockledge Bar-B-Q, Inc.,* 619 So. 2d 414, 416 (Fla. 5th DCA 1993).

28. Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded or one capable of mathematical calculation. *Earthlink, Inc. v. Log On Am., Inc.*, 2006 U.S. Dist. LEXIS 17282, *4 (ND. Ga 2006) (a default admits all well-pleaded allegations of a complaint, which may include plaintiff's entitlement

to liquidated damages, citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).)

29. Where the defendant does not contest the amount prayed for in the complaint and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing. *Earthlink, Inc.* at *4.

30. The exact amount prayed for by ISC in its Complaint is principal in the liquidated amount of $707,861.00. (Compl. ¶ 44; Wherefore Clause ¶¶ A, C, p.11.) (*See* Aff. of Indebtedness attached hereto as Exhibit "A.") (*Also see* § 12, Promotional Display Space Agreement.)

31. ISC's Complaint contains an error in its computation of the 2012 Penalty Fees due ISC. ISC hereby withdraws and corrects such computation error. ISC seeks $79,000 for the Penalty Fees due ISC for year 2012 (more fully described below). ISC does not seek an additional $22,500 in Penalty Fees for year 2012 for the uninvoiced balance for 2012. *See* ¶ 43 of the Complaint.

32. Under the Promotional Display Space Agreement RACING IN-SITES promised to pay "Rights Fees" in the amount $290,000 for year 2012, $298,700 for year 2013, and $307,661 for year 2014. § 4(A)(1), Promotional Display Space Agreement. More specifically, for year 2012 RACING IN-SITES promised to pay $15,263.15 per, "Major Event Weekend" four (4) days prior to said event. *Id.*

33. In the event RACING IN-SITES failed to attend any Major Event Weekend, RACING IN-SITES promised to pay a "Penalty Fee" in lieu of the Rights Fee in the amount of One Thousand Dollars ($1,000) for any missed event from February 2012 through July 2012, and Seven Thousand Five Hundred Dollars ($7,500) for any missed event after July 2012 through December 2012. § 4(A)(2), Promotional Display Space Agreement.

34. Between March 5, 2012 and July 25, 2012, GREAT REWARD paid five payments directly to ISC for the benefit of RACING IN-SITES, totaling $19,263.15, via company checks issued from GREAT REWARD for monies due under the Promotional Display Space Agreement. (Copies of GREAT REWARD's five company checks are attached to ISC's Complaint as Composite Exhibit "D" thereto.)

35. Of the $19,263.15 paid by GREAT REWARD, four payments were made in the amount of $1,000 and attributed to 2012 Penalty Fees accrued prior to July 2012 and one payment was made in the amount of $15,263.15 and attributed to 2012 Rights Fees. These were the only post-execution payments made by or for the benefit of RACING IN-SITES.

36. There were 19 Major Event Weekends scheduled in 2012 and set forth in the Promotional Display Space Agreement. ISC received payments for five of the Major Event Weekends, thus ISC is due Penalty Fees or Rights Fees due the remaining fourteen Major Event Weekends.

37. Between May 3, 2012 and October 18, 2012, ISC issued 14 invoices in the sum of $79,000 (the "Invoices") attributed to Penalty Fees due ISC under the Promotional Display Space Agreement as RACING IN-SITES failed to attend any Major Event Weekends following payment of $19,263.15 for the first five Major Event Weekends. (Copies of the Invoices are attached hereto as Composite Exhibit "B.")

38. Four of the Invoices (issued between May 3, 2012 and June 8, 2012) were attributed to 2012 Penalty Fees and were issued in the amount of $1,000.00 each. (Penalty Fees accrued prior to July 2012 are to be $1,000.00 per missed Major Event Weekend.)

39. Ten of the Invoices (issued between September 11, 2012 and October 18, 2012) were attributed to 2012 Penalty Fees and were issued in the amount of $7,500.00 each. (Penalty Fees accrued after July 2012 are to be $7,500.00 per missed Major Event Weekend.)

40. The sum of these 14 Invoices equals $79,000.00. Some of the Invoices issued incorrectly reference the same "Contract Description," however, the Invoices show the correct Penalty Fees due ISC for the 14 Major Event Weekends not attended by RACING IN-SITES.

41. RACING IN-SITES and GREAT REWARD failed to pay the Invoices or any portion thereof.

42. RACING IN-SITES and GREAT REWARD are in breach of the Promotional Display Space Agreement.

43. Section 12 of the Promotional Display Space Agreement provides for the acceleration of the payment schedule in the event RACING IN-SITES' creditworthiness changes. This event occurred upon RACING IN-SITES default in paying fees due ISC in May 3, 2012, and is evident upon notice of RACING IN-SITES alleged insolvency via email by David Kaiser to Walker Fletcher dated September 7, 2012. (S*ee* ¶ 19 above.)

44. Due to RACING IN-SITES and GREAT REWARD's breach of the Promotional Display Space Agreement, ISC has elected to accelerate the payment schedules for years 2013 and 2014, and seeks remaining balances due for those years of $298,700 in Rights Fees for 2013, and $307,661 in Rights Fees for 2014. § 12, Promotional Display Space Agreement.

45. Rights Fees for the Major Event Weekends for years 2013 and 2014 were to be paid by RACING IN-SITES in full, regardless of attendance by RACING IN-SITES to such Major Event Weekends. *Id.*

46. Under the Agreement, the following sums remain due and owing ISC:

    a. Penalty Fees (Year 2012): $79,000.00.

    b. Rights Fees (Year 2013): $298,700.00.

    c. Rights Fees (Year 2014): $307,661.00.

(*See* Aff. of Indebtedness ¶ 9; *also see* § 12, Promotional Display Space Agreement.)

47. To date, the sum of Six Hundred and Eighty-Five Thousand Three Hundred Sixty-One and 00/100 Dollars **($685,361)** in principal remains outstanding under the Promotional Display Space Agreement.

48. Section 4(A)(3) of the Promotional Display Space Agreement provides that Rights Fee will bear interest at the rate of one and one-half (1.50%) percent per month on any balance unpaid as of the applicable period.

49. Recovery of prejudgment interest on the unpaid balance due plaintiff is proper. *Exxon Corp v. Ward*, 438 So. 2d 1059 (Fla. 4th DCA 1983).

50. Prejudgment interest on the principal sum due prior to acceleration of the payment schedules for years 2013 and 2014 **($79,000.00)** accrued at a rate of 1.50% per month from May 3, 2012, through January 2, 2014, totals **$23,725.97.**

51. ISC has incurred the sum of **$425.00** in court costs in prosecuting this action against RACING IN-SITES and GREAT REWARD. (*See* Aff. of Costs attached hereto as Exhibit "C.")

52. ISC has sustained money damages in the **total liquidated sum of Seven Hundred Nine Thousand Five Hundred Eleven and 97/100 Dollars ($709,511.97).**

53. ISC has retained the undersigned attorney as a result of RACING IN-SITES and GREAT REWARD's failure to pay the balance due under the Promotional Display Space Agreement and is obligated to pay its attorney a reasonable fee for services rendered and costs incurred.

54. Further, section 4(A)(3) of the Promotional Display Space Agreement provides that ISC is entitled to reimbursement of its reasonable attorney's fees and costs.

**WHEREFORE**, plaintiff, INTERNATIONAL SPEEDWAY CORPORATION, moves this Honorable Court for entry of final judgment after default in favor of INTERNATIONAL

SPEEDWAY CORPORATION, and against defendants, RACING IN-SITES, LTD., and GREAT REWARD, L.L.C., joint and severally, that:

A. Finds defendant, RACING IN-SITES, LTD. to be in default for failing to file or serve a responsive pleading or motion directed to the merits of the complaint or make any appearance in this action;

B. Finds defendant, GREAT REWARD, L.L.C. to be in default for failing to file or serve a responsive pleading or motion directed to the merits of the complaint or make any appearance in this action;

C. Finds defendants, RACING IN-SITES, LTD. and GREAT REWARD, L.L.C., joint and severally liable to INTERNATIONAL SPEEDWAY CORPORATION for the balance due under the Promotional Display Space Agreement;

D. Awards INTERNATIONAL SPEEDWAY CORPORATION principal damages in the amount of **Seventy Nine Thousand and 00/100 Dollars ($79,000.00)** as the 2012 Penalty Fees due under the Promotional Display Space Agreement;

E. Awards INTERNATIONAL SPEEDWAY CORPORATION pre-judgment interest at the rate of one and one-half percent (1.50%) per month on the 2012 Penalty Fees ($79,000) due prior to acceleration of the payment schedules for years 2013 and 2014, accrued from May 3, 2012, through January 2, 2014 in the liquidated sum of **$23,725.97**, plus all pre-judgment interest that accrues subsequent to January 2, 2014, and the entry of final judgment;

F. Awards INTERNATIONAL SPEEDWAY CORPORATION principal damages in the amount of **Two Hundred Ninety Eight Thousand Seven Hundred and 00/100 Dollars**

**($298,700.00)** as the 2013 Rights Fees due under the Promotional Display Space Agreement;

G. Awards INTERNATIONAL SPEEDWAY CORPORATION principal damages in the amount of **Three Hundred Seven Thousand Six Hundred Sixty One and 00/100 Dollars ($307,661.00)** as the 2014 Rights Fees due under the Promotional Display Space Agreement;

H. Awards INTERNATIONAL SPEEDWAY CORPORATION its court costs incurred in the prosecuting of this action in the amount of **Four Hundred Twenty Five and 00/100 Dollars ($425.00);**

I. Thus, the **total liquidated sum of Seven Hundred Nine Thousand Five Hundred Eleven and 97/100 Dollars ($709,511.97);**

J. Finds INTERNATIONAL SPEEDWAY CORPORATION to be the prevailing party in this action, thus, entitled to an award of attorney's fees;

K. Reserves jurisdiction over the parties and the subject matter of this action to determine reasonable attorney's fees to be awarded to INTERNATIONAL SPEEDWAY CORPORATION, post-judgment; and

L. Grants such other and further relief as this Honorable Court deems equitable and just under the circumstances.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

I hereby certify that counsel for the movant has attempted to confer with the defendants in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

By: /s/ William R. Wohlsifer
William R. Wohlsifer, Esquire
Fla. Bar No: 86827

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been has been served on all parties receiving electronic notification via the Court's CM/ECF system and furnished via First Class Mail on this 2nd day of January 2013 to:

David Kaiser, President
Racing In-Sites, Ltd.
2712 Riverview Drive
Maumee, OH 43537

David Kaiser, President
Great Reward, L.L.C.
2712 Riverview Drive
Maumee, OH 43537

Respectfully submitted by:

**WILLIAM R. WOHLSIFER, PA**

By: /s/ William R. Wohlsifer

William R. Wohlsifer, Esquire
Fla. Bar No: 86827
1100 E Park Ave Ste B
Tallahassee, Florida 32301
Tel: (850) 219-8888
Fax: (866) 829-8174
E-Mail: william@wohlsifer.com